FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 04, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL R.,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | No. 2:18-cv-00016-SAB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff Daniel R. Ross' Motion for Summary Judgment, ECF No. 12, and Defendant Commissioner of the Social Security Administration's Cross-Motion for Summary Judgment, ECF No. 13. The motions were heard without oral argument. Plaintiff is represented by D. James Tree, and Defendant is represented by Assistant United States Attorney Timothy Durkin and Special Assistant United States Attorney Michael Howard. For the reasons set forth below, the Court **grants** Plaintiff's motion, **denies** Defendant's motion, **reverses** the decision of the administrative law judge ("ALJ"), and **remands** for a determination of Social Security payments with an onset date of January 1, 2012.

## Jurisdiction

On January 31, 2014, Plaintiff filed an application for supplemental security income disability insurance benefits. Plaintiff alleges a disability onset date of January 1, 2012.

//

**ORDER GRANTING PLAINTIFF'S MOTION . . . + 1**

Plaintiff's application was denied initially and on reconsideration. On February 18, 2016, Plaintiff appeared and testified at a hearing held in Seattle, Washington before an ALJ. The ALJ issued a decision on October 4, 2016, finding Plaintiff was not disabled. Plaintiff timely requested review by the Appeals Council, which denied the request on November 20, 2017. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner.

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on January 16, 2018. The matter is before this Court under 42 U.S.C. § 405(g).

## Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Id.*; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 416.971. If he is not, the ALJ proceeds to step two.

//

**ORDER GRANTING PLAINTIFF'S MOTION . . . + 2**

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least twelve months and must be proven through objective medical evidence. 20 C.F.R. § 416.908-.909. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. § 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 416.920(e). An individual's residual functional capacity is their ability to do physical and mental work activities on a sustained basis despite limitations from the individual's impairments.

Step 4: Does the impairment prevent the claimant from performing work they have performed in the past? 20 C.F.R. § 416.920(f). If the claimant is able to perform their previous work, they are not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of their age, education, and work experience? 20 C.F.R. § 416.920(g).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents them from engaging in their previous occupation. *Id.* At step five, the burden shifts to the Commissioner to show that the claimant can perform

**ORDER GRANTING PLAINTIFF'S MOTION . . .** + 3

other substantial gainful activity. *Id.*

## Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court reviews the entire record. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## Statement of Facts

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs to this Court; only the most relevant facts are summarized here. At the time of the hearing, Plaintiff was forty-five-years old. Plaintiff has completed school through the eleventh grade, and is able to communicate in English.

**ORDER GRANTING PLAINTIFF'S MOTION . . .** + 4

Since 2004, Plaintiff has held one job as a tow truck driver and mechanic. For eight years, Plaintiff worked in this capacity and was responsible for hooking up cars to be towed, unloading cars, and disassembling damaged cars. Plaintiff was discharged from this job because of a shoulder injury that prevented him from fully performing his duties.

Plaintiff testified that his injuries, primarily degenerative joint disease of the right shoulder, cause severe pain and have rendered him unable to work. Plaintiff's pain began during his prior employment and he takes prescribed opioid pain medication daily to manage. Due to pain, Plaintiff has limited use of his arm and must rest for an hour after fifteen minutes of use.

Plaintiff also experiences chronic lower-back pain, which prevents him from standing for more than twenty minutes at a time. On multiple occasions, he has sought emergency medical treatment for the continuing severity of his pain. One doctor recommended treatment consisting physical therapy, prescription opioids, and nerve blocking injections. However, Plaintiff's pain persists and he requires a cane to walk. Plaintiff is unable to wash dishes, cook meals, and walk his dog due to pain and requires a break after twenty minutes of activity. Showering and personal grooming are difficult and Plaintiff occasionally needs his son's assistance to get dressed. Plaintiff's pain is aggravated by obesity, which further limits his ability to perform daily activities.

In addition to chronic shoulder and back pain, Plaintiff has coronary artery disease ("CAD") and suffers from heart palpitations. These episodes occur multiple times throughout the week and affect Plaintiff's sleep. When an episode occurs, Plaintiff experiences shortness of breath, dizziness, and needs to rest for several hours before engaging in any activity.

### The ALJ's Findings

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2012. AR 22.

**ORDER GRANTING PLAINTIFF'S MOTION . . . + 5**

At step two, the ALJ found Plaintiff has the following severe impairments: status post rotator cuff repair in the right shoulder; bursitis of the right hip; CAD; and obesity. AR 22. He also has the following non-severe impairments: lumbar radiculopathy; hypertension; gastroesophageal reflux disease ("GERD"); and Vitamin D deficiency. AR 22.

At step three, the ALJ found that Plaintiff's impairments or combination of impairments do not meet or medically equal any Listing. AR 23.

The ALJ concluded that Plaintiff has the residual functional capacity to perform

> [l]ight work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift or carry up to 20 pounds occasionally and up to 10 pounds frequently, stand or walk for approximately 6 hours and sit for approximately 6 hours per 8 hour work day with normal breaks; never climb ladders ropes or scaffolds; occasionally stoop, kneel, crouch, and crawl; occasional overhead reaching; avoid concentrated exposure to excessive vibration and no working at unprotected heights.

AR 24. At step four, the ALJ found that Plaintiff is incapable of performing any past relevant work. AR 29.

At step five, the ALJ found Plaintiff was not disabled on the basis that he could perform other work which exists in significant numbers in the national economy, including positions such as cashier and escort vehicle driver. AR 30-31.

## Issues for Review

1. Whether the ALJ properly evaluated the medical opinion evidence of both Lisa Alexander, A.R.N.P, and Myrna Palasi, M.D.; and

2. Whether the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

//
//
//
//

**ORDER GRANTING PLAINTIFF'S MOTION . . . + 6**

## Discussion

**1. Whether the ALJ properly evaluated the medical opinion evidence of Lisa Alexander, A.R.N.P. and Myrna Palasi, M.D.**

The ALJ is tasked with resolving conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Generally speaking, three types of doctors provide medical evidence: treating doctors, examining doctors, and reviewing (non-examining) doctors. "By rule the Social Security Administration favors the opinion of a treating physician over non-treating physicians." 20 C.F.R. § 416.927[1]; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight." *Orn*, 495 F.3d at 631. If a treating physician's opinion is not given "controlling weight" because it does not meet these requirements, the ALJ should consider (i) the length of the treatment relationship and the frequency of examination by the treating physician; and (ii) the nature and extent of the treatment relationship between the patient and the treating physician in determining the weight it will be given. *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a

---

[1] 20 C.F.R. § 416.927(c)(2) states: Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

**ORDER GRANTING PLAINTIFF'S MOTION . . .** + 7

substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

The ALJ will first look at and primarily rest upon "objective medical evidence" from an "acceptable medical source" when reviewing a claimant's symptoms and corresponding application for social security benefits. SSR 16-3P, 2017 WL 5180304, at *5. If the ALJ "cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then [the ALJ] carefully consider[s] other evidence in the record." *Id*. Opinions from "other sources" alone will not be enough to "establish the existence of a medically determinable impairment." SSR 06-03P, 2006 WL 2329939, at *2 (rescinded effective March 27, 2017). The evidence supplied by "other sources" should be used to supplement the opinions of an "acceptable medical source" to "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id*. Rather than disregard opinions of "other sources" entirely, the ALJ should attribute them appropriate weight and give them consideration.

### A. Lisa Alexander, A.R.N.P.

A.R.N.P. Alexander is Plaintiff's primary treating source.[2] In January 2014, A.R.N.P. Alexander opined that Plaintiff was suffering from a shoulder impairment, which began approximately four years prior to the rendered opinion. Within this evaluation, A.R.N.P. Alexander noted that Plaintiff's impending shoulder surgery would result in severe limitations expected to last approximately six months following the surgery. A.R.N.P. Alexander noted Plaintiff was "[s]everely limited" and was "unable to meet the demands of sedentary work." AR 403, 584. The impairment would limit Plaintiff's ability to lift, carry, handle, push,

---

[2] The Court notes that opinions of A.R.N.P.s are now considered acceptable medical sources in determining a claimant's eligibility for benefits. *See* 20 C.F.R. § 404.1502(a)(7).

**ORDER GRANTING PLAINTIFF'S MOTION . . .** + 8

pull, and reach. On March 4, 2014, Plaintiff underwent an arthroscopic rotator cuff repair. During two separate post-operative examinations, one in May and another in June of 2014, A.R.N.P. Alexander reported Plaintiff made "some progress with motion" but had not yet recovered fully. AR 495. In 2015, A.R.N.P. Alexander reported the Plaintiff was suffering from significant shoulder pain. At that time, Plaintiff continued his opioid pain medication for his unstable right shoulder joint.

The ALJ gave A.R.N.P. Alexander's opinion "little weight." The ALJ interpreted A.R.N.P. Alexander's opinion as one that determined Plaintiff could perform sedentary work and that his impairments resulting from right shoulder surgery were expected to only last six months. AR 28. The ALJ determined that A.R.N.P Alexander's opinion would not establish a claim for disability, and should therefore be attributed little weight.

However, the ALJ misstated and mischaracterized A.R.N.P. Alexander's opinion. The record does not show that A.R.N.P. Alexander opined Plaintiff could perform sedentary work, as the ALJ has concluded. In fact, the record shows that A.R.N.P. Alexander indicated Plaintiff was "severely limited" and was "unable to meet the demands of sedentary work." AR 403, 584. Because the ALJ misstated A.R.N.P. Alexander's opinion, the weight given thereto is unsupported by the record.

Furthermore, the ALJ attributed little weight to A.R.N.P Alexander's opinion because the ALJ believed the record did not show a long-term limitation to sedentary work. A.R.N.P. Alexander estimated Plaintiff's limitations resulting surgery to persist for six months; however, she also opined that the impairment had been ongoing for four years. AR 401-03. If the reason for underweighting A.R.N.P. Alexander's medical opinion was because it did not show the Plaintiff meets the twelve-month impairment requirement for a disability claim, then the ALJ was incorrect. Cumulatively, the impairment duration would be approximately four and a half years, which would meet the impairment duration requirement for a

**ORDER GRANTING PLAINTIFF'S MOTION . . .** + 9

disability claim. The ALJ failed to consider that Plaintiff's impairment was disabling for the four years prior to Plaintiff's March 2014 surgery. Had the ALJ considered this time-period, then the Plaintiff would meet the impairment duration requirement.

Moreover, A.R.N.P. Alexander's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record," thus, it should have been given controlling weight. *Orn*, 495 F.3d at 631. For instance, A.R.N.P. Alexander's conclusion that Plaintiff was limited in his ability to lift, carry, handle, push, pull, and reach is supported by several evaluations wherein A.R.N.P. Alexander noted significant pain and limitations in Plaintiff's shoulder, treatment consisting of medication and physical therapy, and Plaintiff's lack of success at physical therapy. A.R.N.P. Alexander's evaluation is bolstered by Plaintiff's reported pain levels and Plaintiff's testimony that his right shoulder pain is the primary reason he cannot work. Plaintiff must consistently take pain medications to manage his pain. Accordingly, the ALJ failed to provide clear and convincing reasons for giving the medical opinion of treating A.R.N.P. Alexander little weight.

Because A.R.N.P. Alexander's opinion was not given controlling weight, the ALJ was required to consider (i) the length of the treatment relationship and frequency of examination by the treating physician; and (ii) the nature and extent of the treatment relationship between the patient and the treating source in determining the weight it will be given. *Id.* at 31. The ALJ spent no time discussing the length, nature, or extent of the treating relationship between Plaintiff and A.R.N.P. Alexander. Indeed, there is no indication that the ALJ considered A.R.N.P. Alexander's lengthy treatment notes dating back two years prior to the February 2016 hearing. During the treating relationship, A.R.N.P. Alexander treated Plaintiff on a regular basis and diagnosed him with supraspinatus and

infraspinatus tendinosis, as well as degenerative changes and an insertional tear of the AC joint, located in the Plaintiff's right shoulder. AR 371, 404. A.R.N.P. Alexander had been treating Plaintiff for several years and was familiar with Plaintiff's medical history and limitations. The ALJ's failure to consider the nature of this treating relationship was error.

For the reasons stated above, the ALJ committed a reversible error by failing to attribute the opinion of Plaintiff's primary treating source, A.R.N.P. Alexander, controlling weight.

### B. Myrna Palasi, M.D.

In addition to not giving A.R.N.P. Alexander's medical opinion controlling weight, the ALJ erroneously failed to assign weight to the opinion of Dr. Palasi. Dr. Palasi served as a reviewing physician. In reviewing Plaintiff's medical records, Dr. Pasai found that Plaintiff had marked and severe medical limitations that met the durational requirement, and limited Plaintiff to sedentary work. The ALJ mentions nothing of the weight attributed to Dr. Palasi's opinion. The Court infers that where the ALJ mistakenly references the "opinion of Dr. Walker"—an opinion that does not exist in this record—and purports to attribute this opinion "partial weight," that the ALJ intended to refer to Dr. Palasi's opinion. *Id.*

The Court concludes the ALJ mischaracterized Dr. Palasi's medical opinion and failed to provide clear and convincing reasons for attributing the opinion only "partial weight." The ALJ cites to one evaluation done by Dr. Palasi wherein Dr. Palasi opined Plaintiff is limited to sedentary work. AR 28, 365. While the exertional tables show limitation to sedentary work, the evaluation demonstrates that Plaintiff's impairments, considered as a whole, demonstrate that Plaintiff is severely limited in his ability to work. AR 583. Dr. Palasi reviewed the medical evidence and concurred with A.R.N.P. Alexander that Plaintiff was severely limited because of his shoulder impairment. AR 28, 364-66, 581. Similarly, Dr. Palasi notes Plaintiff's onset date was four years prior to surgery. The fact that the

**ORDER GRANTING PLAINTIFF'S MOTION . . . ~ 11**

Dr. Palasi and A.R.N.P. Alexander's opinions are consistent with one another bolsters both treating sources' opinions. The opinions of both A.R.N.P. Alexander and Dr. Palasi demonstrate a cumulative impairment duration of four and a half to five years. This meets the minimum impairment durational requirement for a disability claim.

Because the ALJ did not find that Dr. Palasi's opinion was contradicted, the ALJ may only reject it for clear and convincing reasons. In the opinion, the ALJ did not lay out the standard for discounting the opinion of a medical source; nor does the ALJ explain why Dr. Palasi's opinion was purportedly given only partial weight. Dr. Palasi's opinion is consistent with medical evidence in the record, including Plaintiff's continued pain after surgery, failure at physical therapy, and the requirement of opioid pain management. Accordingly, the ALJ's rejection of Dr. Palasi's opinion was unfounded.

In conclusion, the ALJ committed reversible error by discounting the medical opinions of A.R.N.P. Alexander and Dr. Palasi without giving clear and convincing reasons for doing so.

**2. Whether the ALJ properly rejected Plaintiff's testimony.**

An ALJ will no longer perform "credibility findings" when reviewing a claimant's subjective symptom evaluation. SSR 16-3P, 2017 WL 5180304, at *1. The subjective symptom evaluation no longer examines an individual's character, and is instead replaced with a two-step evaluation process. First, the ALJ will use objective medical evidence from an acceptable medical source to determine "whether the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms." *Id* at *3. Test results that are consistent with other evidence in the record will be given greater weight than test results that are inconsistent with other evidence in the record. *Id* at *1. The ALJ will not consider the severity of an individual's alleged symptoms when determining whether there is an underlying MDI. *Id* at *3. If the

ALJ determines that there are MDIs based solely on the medical evidence in the record, then Plaintiff's symptom testimony is not considered.

If the ALJ cannot establish an MDI "that is fully favorable based solely on objective medical evidence," then the next step is to "carefully consider other evidence in the record." *Id.* at *6. The examination of other evidence in the record "includes statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms . . . as well as the factors set forth in our regulations." *Id*. When considering an individual's statements about the intensity, persistence, and effects of symptoms the ALJ should "evaluate whether the statements are consistent with objective medical evidence and other evidence." *Id*. When there is no evidence of malingering, the ALJ must give "specific, clear and convincing reasons" for rejecting a claimant's subjective symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) describe the kinds of evidence, including the factors below, that the ALJ must consider in addition to the objective medical evidence when assessing the individual's subjective symptom testimony:

> 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors

**ORDER GRANTING PLAINTIFF'S MOTION . . .** + 13

concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ found Plaintiff's MDIs "could reasonably be expected to cause the alleged symptoms; however [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 25. The ALJ gave two reasons for this finding: (1) Plaintiff's limited daily activities were not "objectively verified with a high degree of certainty"; and (2) assuming Plaintiff's disabilities are severe as alleged, it is difficult to ascribe these limitations to his medical condition. *Id*. For the reasons discussed below, the ALJ erroneously found that the Plaintiff's testimony regarding the intensity, persistence, and limitations were inconsistent with the record.

First, the ALJ mistakenly concluded that the Plaintiff's limited daily activities could not be "objectively verified with a high degree of certainty" by the evidence in the record. The ALJ determined the evidence in the record fails to establish Plaintiff's disability is due to physical impairments attributable to his obese state. AR 26. However, the ALJ also notes there is evidence that Plaintiff "was obese throughout the record." *Id*. Plaintiff asserts that his obese state has affected his mobility and ability to sleep. Both Plaintiff's sleep apnea and assisted ambulation are documented throughout the record. *See, e.g.*, AR 439 (Plaintiff is diagnosed with sleep apnea); AR 756 (noting Plaintiff's "back problems" and use of a cane make "walking down the hallway" a difficult task). The ALJ found Plaintiff's limitations related to obesity cannot be verified with a high degree of certainty, and therefore discounts Plaintiff's testimony. However, the record is replete with sources documenting Plaintiff's limitations in relation thereto.

Additionally, the ALJ mischaracterizes an MRI of Plaintiff's right shoulder that supports Plaintiff's alleged limitations. The ALJ noted the "X-rays of his right

**ORDER GRANTING PLAINTIFF'S MOTION . . . + 14**

shoulder showed a normal shoulder with no evidence of degenerative joint disease." AR 26. To the contrary, the X-ray shows evidence of a degenerative joint disease of the AC joint and greater tuberosity spurring. AR 368. An MRI conducted by A.R.N.P. Alexander showed degenerative changes and an insertional tear in Plaintiff's shoulder; Dr. Palasi concurred in this assessment. AR 371, 404. Plaintiff testified that he stopped working because of his right shoulder pain and the medical evidence substantially supports Plaintiff's symptom allegations.

The Ninth Circuit has "warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Recognizing that claimants should not be penalized for attempting to lead their normal lives, "only if Plaintiff's level of activity is inconsistent with his claimed limitations" should this have any bearing on Plaintiff's testimony. *Id.*

Plaintiff's testimony regarding his daily activities is consistent with his limitations. Plaintiff takes all day to complete daily chores because of his pain, takes frequent breaks, and requires assistance walking and occasionally getting dressed. AR 207. Plaintiff's testimony that he cannot work due to his shoulder pain is consistent with Plaintiff's limitations of standing for twenty minutes at a time, the necessity of alternating positions approximately every fifteen minutes, and requiring a rest break while walking down the hall. *Id*. The ALJ's conclusory finding that Plaintiff's testimony is not entirely consistent with the evidence in the record is erroneous. Moreover, Plaintiff's daily activities are not inconsistent with his described limitations and the ALJ improperly discredited Plaintiff in this respect.

Second, the ALJ concluded that if Plaintiff's symptoms are "truly as limited as alleged, it would be difficult to attribute that degree of limitation the claimant's

medical condition, as opposed to other reasons, in view of the relatively weak medical evidence." AR 27. The ALJ should only consider Plaintiff's testimony if it cannot be determined, based solely on the objective medical evidence in the record, that Plaintiff has MDIs that are reasonably expected to cause the symptoms alleged. SSR 16-3P, 2017 WL 5180304, at *3. Plaintiff need not show with absolute certainty, or a high degree of certainty, as the ALJ suggests, that his symptoms are directly caused by his impairments. The ALJ noted that Plaintiff's MDIs "could reasonably be expected to cause the alleged symptoms." AR 25. Accordingly, the ALJ should only discount a claimant's subjective testimony that "could not reasonably be expected to produce the individual's symptoms." SSR 16-3p at *4. The ALJ failed to follow the procedure outlined in the regulations for discounting Plaintiff's symptom testimony and therefore erred.

Overall, the record substantiates Plaintiff's testimony and does not support the ALJ's findings. Plaintiff's testimony regarding his daily activities is consistent with his testimony about his functional limitations and objective medical evidence in the record. Accordingly, the ALJ committed reversible error.

## Conclusion

The ALJ erroneously gave improper weight to medical opinion evidence and rejected Plaintiff's symptom testimony. If this evidence had been properly credited, Plaintiff would have been found disabled. A review of the record as a whole, including Plaintiff's testimony in concert with the properly-credited opinion of A.R.N.P. Alexander and Dr. Palasi, creates no legitimate doubt that Plaintiff is disabled within the meaning of the Social Security Act. Further administrative proceedings will not be useful and there are no outstanding issues to consider. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). Consequently, the proper remedy is to remand for a calculation and award of appropriate benefits, with a disability onset date of January 1, 2012. *Garrison*, 759 F.3d at 1019-20.

**ORDER GRANTING PLAINTIFF'S MOTION . . .** + 16

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

3. The decision of the Commissioner denying benefits is **reversed** and **remanded** for an award of benefits, with a disability onset date of January 1, 2012.

4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, enter judgment, and close the file.

**DATED** this 4th day of September, 2018.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION . . . + 17**